```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
SAMUEL H. PROVISERO,

                    Plaintiff,

        -against-                            MEMORANDUM & ORDER
                                             09-CV-4695(JS)
MICHAEL J. ASTRUE, Commissioner of
Social Security,

                    Defendant.
----------------------------------X
APPEARANCES
For Plaintiff:      Christopher James Bowes, Esq.
                    Office of Christopher James Bowes
                    54 Cobblestone Drive
                    Shoreham, NY 11786

For Defendant:      Vincent Lipari, Esq.
                    United States Attorney's Office
                    Eastern District of New York
                    610 Federal Plaza, 5th Floor
                    Central Islip, NY 11722-4454
```

SEYBERT, District Judge:

Plaintiff Samuel H. Provisero ("Plaintiff") appeals the decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for disability benefits. Plaintiff and the Commissioner cross-moved for judgment on the pleadings; for the following reasons, Plaintiff's motion is GRANTED and the Commissioner's motion is DENIED. Plaintiff's case is remanded to the Commissioner for further evaluation consistent with the discussion below.

BACKGROUND

Plaintiff is a Vietnam veteran who began a career as a crane operator after he was discharged from the Army. (R. 23, 37-38, 115-16, 269.) His career included an approximately thirty-one month stint at the World Trade Center recovery and cleanup site, where he was exposed to dust, fumes, and other respiratory irritants. (R. 137.) Plaintiff was injured on the job when he fell from his crane in May 2006. He applied for disability benefits thereafter, claiming that asthma and depression made it impossible for him to return to his regular duties. (R. 23.) The Commissioner denied Plaintiff's application and this appeal followed. (R. 25-27.) The following discussion summarizes the relevant evidence in the administrative record.

I. Medical Evidence

  A. Treating Physician Evidence

Dr. Stanley Rabinowitz was Plaintiff's treating physician. He examined Plaintiff on December 29, 2004 and noted that Plaintiff complained of significant dyspnea on exertion, including wheezing and difficulty walking in the mall. He noted that Plaintiff suffered from gastrointestinal esophageal reflux disorder ("GERD") and that he wakes up during the night. Dr. Rabinowitz diagnosed Plaintiff with World Trade Center syndrome, including reactive airway disease, GERD, nasal congestion, post-

traumatic stress syndrome, and depression. (R. 137.) On the New York Workers' Compensation Board Billing Form that he filled out for this visit, Dr. Rabinowitz checked "yes" to the question "Is patient unable to perform regular duties of work?" and indicated that the degree of Plaintiff's impairment was "partial." (R. 369.)[1]

On January 4, 2005, tests revealed that Plaintiff had below-normal pulmonary function. (R. 138.) Dr. Rabinowitz characterized the test results as showing "mild obstructive ventilator impairment without significant response to inhaled bronchodilators." (R. 140.) He indicated "respiratory distress" on the Workers' Compensation billing form and again checked the boxes indicating that Plaintiff was partially impaired from resuming his regular work duties. (R. 370.)

Plaintiff returned to Dr. Rabinowitz on March 7, 2005, where Dr. Rabinowitz reiterated many of his observations from Plaintiff's December 29 visit. Dr. Rabinowitz observed that Plaintiff was exposed to dust and fumes during the World Trade Center recovery and cleanup. (R. 140.) He noted that Plaintiff smoked a pack of cigarettes a day and that he has "severe dyspnea on exertion while walking and wheezing." (R. 140.) He

---

[1] This form states that the "date of examination on which this report is based" was January 4, 2005, the date of a follow-up visit. In the field for "Dates of Service," however, Dr. Rabinowitz indicated December 29, 2004. (R. 369.)

observed that Plaintiff "claims to be 'addicted' to Afrin nasal spray because of severe nasal obstruction." (R. 140.) He stated that Plaintiff "has significant acid reflux, which wakes him at night" and that Plaintiff was taking medication for depression and seeing a psychiatrist. (R. 140.) Dr. Rabinowitz diagnosed Plaintiff "with World Trade Center syndrome presenting as reactive airway disease, acid reflux, nasal congestion, post-traumatic stress syndrome and depression." (R. 140.) He recommended that Plaintiff quit smoking and prescribed Spriva "because the patient does appear to have an element of [chronic obstructive pulmonary disease 'COPD']." (R. 140.) On the Workers' Compensation billing form for this visit, Dr. Rabinowitz again indicated that Plaintiff was partially impaired from resuming his regular work duties. (R. 372.)

On April 22, 2006, Plaintiff had another pulmonary function test. The results of this test appear to be similar to, or in some instances slightly worse than, Plaintiff's January 4, 2005 test. (R. 141-42.)

Plaintiff fell from his crane on May 16, 2006. He was put on light duty (i.e., no crane work) for approximately two weeks after the accident, and then he stopped working altogether. (R. 23-24.)

Plaintiff saw Dr. Rabinowitz again on December 4, 2006. Dr. Rabinowitz diagnosed World Trade Center syndrome and

4

noted that Plaintiff "appears to have developed symptoms of sleep apnea." (R. 251.) During this visit, Plaintiff reported "several episodes of dizziness while at work resulting in falling." (R. 251.) Dr. Rabinowitz prescribed a sleep study, a repeat pulmonary function test, and a chest CT scan. (R. 251.) He also prescribed Prevacid and Combivent. (R. 251.)[2] Once again, Dr. Rabinowitz indicated that Plaintiff was partially impaired from resuming his regular work duties. (R. 381.)

Plaintiff had another pulmonary function test on December 6, 2006. The results revealed "very minimal obstructive ventilator impairment mostly small airways in nature without change following inhaled bronchodilators." (R. 247.) Plaintiff's pulmonary functioning had improved since an earlier, January 2002 test. (R. 247.) It is not clear whether the December 2006 results were compared with the results from Plaintiff's April 22, 2006 or January 4, 2005 tests.

Plaintiff saw Dr. Rabinowitz again on December 12, 2006 and was diagnosed with "World Trade Center syndrome, reactive airway disease, acid reflux, chronic sinusitis, post traumatic [sic] stress syndrome, chronic depression, and probable obstructive sleep apnea syndrome." (R. 247.) Again,

---

[2] There are documents in the record reflecting that Dr. Rabinowitz reached similar conclusions during a December 5, 2005 visit. (See R. 144.) It is not clear whether Plaintiff saw Dr. Rabinowitz on both days or whether there was an error in the dates of the documents.

5

Dr. Rabinowitz indicated that Plaintiff was partially impaired from resuming his regular work duties. (R. 384.)

A sleep study was performed on January 5, 2007. Among other things, the data revealed that Plaintiff's sleep efficiency was "mildly abnormal," and that his oxygen desaturation was "moderate," with a low oxygen level of eighty percent. (R. 236.) Dr. Giuseppe Caruso diagnosed Plaintiff with "[s]evere obstructive sleep apnea" (R. 236), and he checked the boxes on the Workers' Compensation billing form indicating that Plaintiff was partially disabled from resuming his regular work duties (R. 368).

Plaintiff returned to Dr. Rabinowitz on January 23, 2007. Dr. Rabinowitz noted that Plaintiff complained of feeling tired and fatigued. Dr. Rabinowitz prescribed C-PAP (continuous positive airway pressure) titration and directed Plaintiff to wear the C-PAP machine every night. Dr. Rabinowitz also advised Plaintiff that he "[m]ust avoid driving when drowsy and must avoid alcohol." (R. 245.) As he did several times before, Dr. Rabinowitz indicated that Plaintiff was partially disabled from performing his regular work duties. (R. 385.)

Dr. Caruso fitted Plaintiff for a C-PAP/BiPAP machine on January 29, 2007. (See R. 350.) Dr. Caruso noted that the device "was successful in eliminating respiratory events and maintaining oxygen saturation." (R. 350.) He diagnosed severe

6

obstructive sleep apnea and directed Plaintiff to avoid sedatives, alcohol, anti-histamines, and hypnotics. (R. 350.) He also directed Plaintiff to lose weight. (R. 350.)

Plaintiff saw Dr. Rabinowitz again on February 2, February 13, May 16, and October 31, 2007 and March 25, 2008. At the February 2 visit, Dr. Rabinowitz noted that Plaintiff's oxygen saturation rate was ninety-two percent and that he had a "minimal wheeze." (R. 347.) At the February 13 visit, Dr. Rabinowitz noted that Plaintiff's severe obstructive sleep apnea was "titrated successfully" with BiPAP. (R. 342.) At the May 16 visit, Dr. Rabinowitz advised Plaintiff that he had a life-threatening condition and that he must use the BiPAP device. (R. 342.) He diagnosed Plaintiff with World Trade Center syndrome, reactive airway disease, acid reflux, chronic sinusitis, post-traumatic stress syndrome, chronic depression, and severe obstructive sleep apnea. (R. 342.)

For all but one these visits, Dr. Rabinowitz indicated that Plaintiff was partially disabled from resuming his regular work duties. (R. 377, 380, 386, 388.) But on February 13, 2007--when Dr. Rabinowitz noted that Plaintiff's sleep apnea had been titrated successfully--he checked the box indicating that Plaintiff was <u>not</u> unable to resume his regular job. (R. 387.) Plaintiff explains that this must have been a typographical error; the Commissioner disagrees.

7

B. <u>Consultants' Medical Evidence</u>

On July 3, 2007, Dr. Jonathan Wahl examined Plaintiff at the request of the New York State Division of Disability Determinations. Among other things, Dr. Wahl observed that Plaintiff's "chief complaint" was "depression with focus of attention, concentration deficits, sleep/appetite/mood changes." (R. 263.) He noted that Plaintiff had asthma, which was asymptomatic at the time, and that he "has fear of being around people." (R. 263.) He concluded that Plaintiff "would benefit from a psychological evaluation, even counseling, and avoiding environments known to have dust and respiratory irritants given the history of asthma. He should avoid intensely strenuous exercise. He does not appear to have other limitations or restrictions." (R. 265.)[3]

On July 12, 2007, Plaintiff was examined by Dr. Judith Shaw, a consulting psychiatrist for the New York State Department of Disability Determinations. (R. 267.) Dr. Shaw's report indicates that Plaintiff stated that he stopped working because of asthma and depression. (R. 267.) She noted that Plaintiff was receiving psychiatric treatment every two months and taking Remeron, Prozac, and Lamictal. (R. 267.) She

---

[3] Dr. Wahl also reported that Plaintiff was an ex-heroin user between 1995 and 1997. (R. 263.)

8

diagnosed a "depressive disorder, [not otherwise specified]" and explained that:

> [Plaintiff] should continue with psychiatric treatment as currently provided. In addition to his current psychiatric treatment, [Plaintiff] might benefit from some ongoing psychotherapy, particularly cognitive behavioral psychotherapy, to help him acquire some specific techniques for the more effective management of feelings of depression and anxiety. Prognosis is fair given the fact that [Plaintiff] reports some improvement in his feelings of depression and anxiety as a result of his current medication and psychiatric treatment. Continued psychiatric treatment, particularly if coupled with ongoing psychotherapy might help to facilitate a continuing positive prognosis in terms of [Plaintiff's] moods.

(R. 271.)

On August 7, 2007, non-examining psychiatrist E. Gagen examined Plaintiff's file and concluded that Plaintiff suffered from a depressive disorder (R. 277) and an opioid disorder that was in remission (R. 282). As part of the review, Dr. Gagen completed a checklist concerning the limitations on Plaintiff's functional limitations. This form asked Dr. Gagen to check one of five boxes (labeled "None," "Mild," "Moderate," "Marked," and "Extreme") for each of three categories. Dr. Gagen indicated "mild" for all three categories: Plaintiff's restrictions in his activities of daily living; his difficulties in maintaining social functioning; and his difficulties in maintaining

9

concentration, persistence, or pace. Dr. Gagen also noted that Plaintiff suffered "one or two" repeated episodes of deterioration, each of an extended duration. (R. 284.)

II. Non-Medical Evidence

A. Lay Disability Consultant

On August 30, 2007, W. Davis--a non-doctor disability analyst--reviewed Plaintiff's disability claim. Davis concluded that Plaintiff could frequently lift and carry 50 pounds and stand and walk for about 6 hours in an eight hour workday. (R. 293.) Plaintiff could "occasionally" climb ladders and stairs and could "frequently" stoop, kneel, crouch, and crawl. (R. 294.) Davis concluded that Plaintiff should "avoid even moderate exposure" to "fumes, odors, dusts, gases, poor ventilation, etc." (R. 295.)

B. Plaintiff's Testimony

In relevant part, Plaintiff testified that he stopped working in May 2006 after he fell from his crane and sustained an injury that required stitches. (R. 23.) His employer kept him on the job in a reduced capacity for a couple of weeks and then Plaintiff stopped working altogether. (R. 24-25.) Plaintiff sees Dr. Rabinowitz every few months in connection with his asthma and depression; Plaintiff testified that his condition has "gotten worse" since the May 2006 accident. (R. 27.) He "get[s] out of breath very, very shortly" after

performing "any type of work," including simply walking up a flight of stairs. (R. 27.) Plaintiff testified that he was a heroin addict for a period in the 1970s after he came home from Vietnam but that he has been clean for twenty years. (R. 29-30.) Plaintiff testified that he can perform certain tasks, including taking out the garbage and mopping the floor, but that he can only climb stairs "with stress." (R. 36-38.)

III. Procedural History

Plaintiff applied for disability benefits on May 18, 2007. (R. 115-19.) The Commissioner denied his claim on September 7, 2007 because he found that Plaintiff was capable of performing his prior work as a crane operator. (R. 46.) Plaintiff requested a hearing, and he appeared with counsel before Administrative Law Judge Seymour Raynor (the "ALJ") on May 2, 2008. (See R. 17-41.)

A. The Disability Determination Framework

The Commissioner must apply a five-step analysis when determining if a claimant is disabled. See Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000). First, the claimant must not be engaged in any substantial gainful activity. See 20 C.F.R. § 404.1520(b). Second, the claimant must prove that he suffers from a "severe impairment" that significantly limits his or her mental or physical ability to do basic work activities. See 20 C.F.R. § 404.1520(c). Third, the claimant must show that his

impairment is equivalent to one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. See 20 C.F.R. § 404.1520(d). Fourth, if his impairment or its equivalent is not listed in the Appendix, the claimant must show that he does not have the residual functional capacity to perform tasks required in his or her previous employment. See 20 C.F.R. § 404.1520(f). Fifth, if the claimant successfully makes these showings, the Commissioner must determine if there is any other work within the national economy that the claimant is able to perform. See 20 C.F.R. § 404.1520(g).

The claimant has the burden of proving the first four steps of the analysis, while the Commissioner bears the burden of proof for the last step. See Shaw, 221 F.3d at 132. "In making the required determinations, the Commissioner must consider: (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family and others; and (4) the claimant's educational background, age and work experience." Boryk v. Barnhart, No. 02-CV-2465, 2003 WL 22170596, at *8 (E.D.N.Y. Sept. 17, 2003) (internal citation omitted).

B. The ALJ's Decision

The ALJ denied Plaintiff's claim in a written decision (the "ALJ Decision") that found, in relevant part, that

Plaintiff's sleep apnea, depression, and anxiety were medically determinable impairments that were not per se disabling. (R. 11.) The ALJ further determined that Plaintiff had the residual functional capacity ("RFC") to perform medium, low-stress work and that he was not prevented from resuming his duties as a crane operator. (R. 12-13.) The Court will address specific portions of the ALJ Decision in the discussion below.

### C. The Appeals Council Review

Plaintiff sought review of the ALJ's decision from the Appeals Council. In connection with his appeal, Plaintiff submitted a letter from Dr. Rabinowitz that largely recounted the diagnoses discussed above. (R. 334-35.) Dr. Rabinowitz concluded his letter with this opinion:

> IMPRESSION: World Trade Center syndrome presenting with reactive airways disease, recurrent bronchitis, GERD, post-traumatic stress syndrome, chronic depression and severe obstructive sleep apnea. The patient will require chronic daily medication. His prognosis for further improvement is poor and he remains completely disabled due to severe World Trade Center Syndrome.

(R. 335.) Without elaborating on its reasons, the Appeals Council denied Plaintiff's appeal on August 29, 2009. (R. 1-4.) The ALJ's decision is the Commissioner's "final" decision on Plaintiff's application for disability benefits. (R. 1-4.)

13

DISCUSSION

Plaintiff raises the following arguments why the Commissioner erred. First, he argues that the Commissioner did not adequately explain his reasons for not giving controlling weight to Plaintiff's treating physician. Specifically, Plaintiff points out that there is little to reconcile Dr. Rabinowitz's opinion that Plaintiff should avoid operating heavy equipment when drowsy with the ALJ's finding that Plaintiff was fit for his prior work as a crane operator. (Pl. Br. 18-19.) Second, Plaintiff argues that the ALJ was wrong in finding that Plaintiff was fit for his prior work, which exposed him to dust and other respiratory irritants, despite medical recommendations that Plaintiff avoid these types of irritants because of his asthma. (Id. 20-21.) Third, he argues that the ALJ improperly rejected as incredible Plaintiff's testimony about his symptoms. (Id. 21-23.) Fourth, he argues that the ALJ placed undue reliance on a lay disability analyst. (Id. at 23-24.) Finally, Plaintiff argues that reversal, not remand, is the appropriate remedy on this appeal. (Id. at 24.)

Because the ALJ's and Appeals Council's decisions are confusing with respect to the weight afforded Dr. Rabinowitz's opinions, Plaintiff's case is remanded for clarification.

14

I. Legal Standard

In reviewing the ruling of the ALJ, this Court will not determine de novo whether Plaintiff is in fact disabled. Thus, even if the Court may have reached a different decision, it must not substitute its own judgment for that of the ALJ. See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991) (internal quotations omitted). Instead, this Court must determine whether the ALJ's findings are supported by "substantial evidence in the record as a whole or are based on an erroneous legal standard." Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000) superseded by statute on other grounds, 20 C.F.R. § 404.1560 (internal quotations omitted). If the Court finds that substantial evidence exists to support the Commissioner's decision, the decision will be upheld, even if evidence to the contrary exists. See Johnson v. Barnhart, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion." Id. The substantial evidence test applies not only to the ALJ's findings of fact, but also to any inferences and conclusions of law drawn from such facts. See id.

To determine if substantial evidence exists to support the ALJ's findings, this Court must examine the entire record, including any conflicting evidence and any evidence from which conflicting inferences may be drawn when deciding if the

findings are supported by substantial evidence. See Gonzalez v. Barnhart, No. 01-CV-7449, 2003 WL 21204448, at *2 (E.D.N.Y. May 21, 2003) (internal quotations omitted). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).

II. Application

The Court agrees with Plaintiff that the Commissioner did not adequately reconcile his decision with Dr. Rabinowitz's opinion that Plaintiff was disabled. "It is well-settled that an ALJ cannot substitute [his] own judgment for that of a medical professional." Gunter v. Comm'r of Soc. Sec., 361 F. App'x 197, 199 (2d Cir. 2010) (citing Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). The "treating physician rule" directs ALJs to give controlling weight to a treating doctor's opinion to the extent that it is consistent with the other evidence in the record. Id. If an ALJ chooses not to credit a treating physician's opinion, he must "explicitly" address the following factors:

> (1) the frequency of examination and length, nature, and extent of the treatment relationship, (2) the evidence in support of the physician's opinion, (3) the consistency of the opinion with the record as a whole, (4) whether the opinion is from a specialist, and (5) whatever other factors tend to support or contradict the opinion.

16

Id. (citing 20 CFR § 404.1527). This duty of explanation applies to the Appeals Council, not just the ALJ. See Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In this case, the Commissioner did not adequately explain why it rejected Dr. Rabinowitz's finding of disability. As is relevant here, Dr. Rabinowitz opined that Plaintiff must avoid operating heavy equipment while drowsy and that Plaintiff was disabled. The ALJ accepted the former opinion (and even acknowledged that it was entitled to controlling weight) but nevertheless concluded that Plaintiff could return to work as a crane operator. (R. 13.) The Appeals Council was then presented with Dr. Rabinowitz's opinion that Plaintiff's World Trade Center syndrome, which in Plaintiff's case manifested itself with symptoms that included sleep apnea and depression, prevented Plaintiff from working. The Appeals Council apparently rejected this opinion but did not provide its reasons. (R. 2.)

Although the ultimate determination of a claimant's disability is reserved to the Commissioner, e.g., Knight v. Astrue, No. 10-CV-5301, 2011 WL 4073603, at *8 (E.D.N.Y. Sept. 13, 2011), the Commissioner "must consider a treating physician's opinion to the extent that it relates to decisions reserved to the Commissioner, or explain why he does not." Id. at *9. As the Second Circuit has explained:

17

> Reserving the ultimate issue of disability to the Commissioner relieves the Social Security Administration of having to credit a doctor's finding of disability, but it does not exempt administrative decisionmakers from their obligation . . . to explain why a treating physician's opinions are not being credited. The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, even--and perhaps especially--when those dispositions are unfavorable.

Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). This is because a claimant "who knows that her physician has deemed her disabled, might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." Id. In this case, the ALJ mentioned test results that showed improvement in Plaintiff's pulmonary function, and he found that Plaintiff's sleep apnea was "well controlled." (R. 13.) Such a finding is at odds with Dr. Rabinowitz's opinion, and the Court thinks it was incumbent on the Appeals Council to explain why this opinion was not persuasive. To state the obvious, the Court's decision is not an endorsement of Dr. Rabinowitz's conclusion; rather, it is simply a direction to the Commissioner to fulfill his "duty of explanation" concerning a treating physician's opinion. Gunter v. Comm'r of Soc. Sec., 361 F. App'x 197, 199 (2d Cir. 2010).

III. Plaintiff's Other Arguments and Request for Reversal

Plaintiff's request that the Court remand the case solely for a calculation of benefits is denied. If the Commissioner decides on remand that Plaintiff is unable to perform his past work, he will have to determine whether there is other work that Plaintiff can perform. The ALJ did not perform this analysis, and the Commissioner is entitled to an opportunity to make this showing, if appropriate, to the ALJ in the first instance. Brickhouse v. Astrue, 331 F. App'x 875, 878 (2d Cir. 2009). Plaintiff's remaining arguments, including that the ALJ improperly treated a lay disability analyst as a medical expert, shall be directed to the ALJ on remand. The scope of the remand embraces those issues plus all other issues as the Commissioner sees fit. Kearney v. Barnhart, No. 05-CV-1860, 2006 WL 1025307, at *7 (E.D.N.Y. Apr. 17, 2006).

## CONCLUSION

Based on the foregoing discussion, Plaintiff's motion for judgment on the pleadings is GRANTED and the Commissioner's motion is DENIED. Plaintiff's case is remanded to the Commissioner for further evaluation consistent with this Memorandum and Order. The Clerk of the Court is respectfully directed to mark this case CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: February  15 , 2012
       Central Islip, New York